UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY BRIDGES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:09-cv-01013-TWP-TAB ) |
| SVC MANUFACTURING, INC., a/k/a PEPSICO, | ) ) ) |
| Defendant. | ) ) |

### ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case comes before the Court on Defendant SVC Manufacturing, Inc., a/k/a PepsiCo, Inc.'s ("SVC"), Motion for Summary Judgment (Dkt. 30). Plaintiff Anthony Bridges ("Bridges") filed this action alleging violations of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, based on disability discrimination. SVC denies these allegations and seeks resolution of Bridges' claims through the entry of summary judgment. For the reasons explained below, SVC's Motion for Summary Judgment (Dkt. 30) must be **GRANTED**.

### I. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment. Under Rule 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). As articulated by the Supreme Court, "summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole." *Id*. at 327. In ruling on a motion for summary judgment, the admissible evidence presented by non-movant must be believed and all

reasonable inferences must be drawn in their favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. When the moving party produces proper support of its motion, the burden then shifts to the non-movant. It is not enough for the non-movant merely to raise factual arguments that cast "some metaphysical doubt as to the material facts." *Baker v. Elmood*, 940 F. 2d 1013 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A party who bears the burden of proof on a particular issue … must "*affirmatively demonstrate*, through specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (emphasis added).

## II.  STATEMENT OF MATERIAL FACTS AND CLAIMS

Bridges disputed only five of the facts asserted by SVC. Therefore, the following statement of facts is based in substantial part on SVC's opening motion, supplemented with additional facts found in Bridges' response. Local Rule 56.1(e).[1] The statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Bridges as the non-moving party. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000).

---

[1] Local Rule 56.1(e) Effect of Factual Assertions: For purposes of deciding the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts: are specifically controverted in the opposing party's "Statement of Material Facts in Dispute" by admissible evidence; are shown not to be supported by admissible evidence; or, alone, or in conjunction with other admissible evidence, allow reasonable inferences to be drawn in the opposing party's favor which preclude summary judgment. The court will also assume for purposes of deciding the motion that any facts asserted by the opposing party are true to the extent they are supported by admissible evidence.

A.     **Preliminary Evidentiary Matters**

As an initial matter, the Court will address the evidentiary issues presented by the parties. In his Response (Dkt. 39), Bridges alleges that several statements contained within SVC's statement of undisputed material facts constitute inadmissible hearsay. Evidence relied upon in support of or opposition to summary judgment must be of the type admissible at trial and facts asserted by a party that are merely conclusory or hearsay cannot serve as the basis for supporting or defeating an otherwise proper motion for summary judgment. *Montgomery v. American Airlines, Inc.*, 2008 WL 4671764, at *13 (N.D. Ill. October 21, 2008); *Payne v. Pauley,* 337 F.3d 767, 772 (7th Cir. 2003).

Hearsay statements are out of court statements offered to prove the truth of the matter asserted. *See Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). The Court finds that the contested portions of SVC's statement of material facts are not considered for the truth of the matter asserted, but rather are considered only to provide context and illustrate their impact on the listener. *Panizzi v. City of Chicago Bd. of Educ.*, 2007 WL 4233755, at *5 (N.D. Ill. November 19, 2007) (material facts consisting of statements made regarding complaints received and passed on were objected to as hearsay. The court found that although the complaints were out of court statements, the statements, along with the letter, were admissible as non-hearsay statements because they were offered solely for the purpose of showing that complaints *were in fact made*); *see also Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 430 (7th Cir. 2004) (the district court correctly allowed an out of court statement into evidence for the limited purpose of the effect that it had on its listener). Therefore, Bridges' objection to the statements as hearsay is overruled.[2]

---

[2] Further, because SVC's Motion is granted, their objection to Bridges' medical records is denied as moot.

## B. Bridges' Employment and Disciplinary Record with SVC

SVC manufactures various beverages, including Gatorade®. SVC's Indianapolis facility mixes, bottles, and distributes Gatorade®. SVC hired Bridges in November 2000 as a Forklift Operator in the Distribution Center at the Indianapolis facility. Bridges' responsibilities as a Forklift Operator included driving a forklift to move pallets of product off the production line and driving a forklift to load and unload product from semi-tractor-trailers.

During Bridges' employment, SVC had a progressive discipline policy ("Policy"). Bridges was made aware of the Policy and understood its applicability to his employment. During his tenure at SVC, Bridges was disciplined several times for misconduct under the Policy. In 2002, Bridges was suspended for three days for making an "inappropriate and offensive" gesture in a picture taken during a team meeting and then denying making the obscene gesture despite the photographic evidence. Four years later, in February 2006, Bridges engaged in a verbal altercation with a co-worker, which continued despite his supervisor repeatedly asking him to stop. As a result of this incident, Bridges was suspended for a second time. One month later, in March 2006, SVC disciplined Bridges after he had an altercation with another co-worker. Bridges received a final written warning for this altercation. Under the Policy, any further incidents could result in Bridges' termination.

## C. Bridges' Medical Leave

Since 1995, Bridges has suffered from degenerative disc disease. As a result, Bridges has had two back surgeries, one in 1995, and another in 2003. Because of his degenerative disc disease, Bridges often suffers from chronic back pain and periods of incapacitation for one to five days. Bridges also suffers from sciatica, herniated lumbar discs, and migraines. Bridges' back conditions are exacerbated by physical activity. During his employment with SVC, Bridges

took prescription medications and attended physical therapy to manage his back conditions. Bridges' doctor believes his back conditions are permanent.

Due to these conditions, Bridges was placed on medical leave beginning on March 15, 2006. This medical leave lasted two years. While on leave, Bridges experienced episodes of incapacitation sometimes as often as once per week. During an episode of incapacitation, Bridges is unable to bathe himself, dress himself, drive, or use the restroom without assistance. Throughout his period of employment, including during his medical leave, when not incapacitated, Bridges is able to drive, dress himself, cook periodically and engage in personal care activities. On March 10, 2008, Bridges was released to return to SVC to work without restrictions.

### D. Bridges' Termination

On April 17, 2006, Robert Cooper ("Cooper"), a co-worker of Bridges', made a complaint against co-worker Tim Johnson ("Johnson"), on the company's "Speak-Up" line – a telephone number employees are given to report concerns – alleging harassment and threats. Later that same day a second call to the Speak-Up line was made by Cooper. In the second complaint, Cooper reported that Johnson had been making discriminatory comments for over a month, relating an alleged April 17, 2006 incident.

Upon receiving the two complaints from Cooper, SVC investigated. Erric Beasley ("Beasley"), an employee from SVC's human resources department, interviewed Cooper, employee Dave Eaker ("Eaker"), and Johnson regarding Cooper's complaints. On May 2, 2006, Eaker provided a written statement corroborating Cooper's second complaint. As a result of Cooper and Eaker's complaints, SVC was prepared to terminate Johnson's employment.

5

During the investigation, Cooper approached Beasley and recanted his complaints against Johnson. Cooper provided Beasley with two written statements, revealing that he had been manipulated by Bridges and Eaker into making false allegations against Johnson to the Speak-Up line. Specifically, Cooper stated that Bridges told him Johnson "did not like him" and Johnson was going to "strike" at him and his job. Cooper alleged that Bridges convinced him it would be better to preemptively strike at Johnson and that Bridges coached him on trigger words to use in his complaint such as threats and racial slurs. Further, Cooper alleged that Bridges stated he "knew how to play dirty" and he had a lot of information on Johnson. Cooper ultimately disclosed that he acted due to the urging of Bridges and Eaker.

Upon the revelation that employees were involved in a conspiracy to make false statements against another employee, Lance Oxley ("Oxley"), plant manager for the Indianapolis facility, became involved in the investigation. The involvement of Oxley was typically reserved only for the most serious of situations. Oxley terminated Eaker's employment and suspended Cooper for three days because of their involvement in the false complaints against Johnson. On May 4, 2006, because Bridges was on medical leave, Beasley left a voicemail message for Bridges and asked him to come to the plant. Bridges contacted Beasley, stating that he was unable to come to the plant for the meeting due to a doctor's appointment. As a result, SVC postponed the meeting with Bridges until his return from medical leave. Oxley had no knowledge of the details that led to Bridges' leave.

By May 10, 2006, SVC had concluded their investigation and Oxley decided to terminate Bridges. This termination was delayed until Bridges had an opportunity to meet with SVC and Beasley. Upon returning from medical leave two years later, Bridges met with Beasley, Human Resources Supervisor Guadalupe Nava, Warehouse Manager Chuck Edel, and union

6

representative Larry Ivy. Beasley asked Bridges if he knew Cooper, Johnson and Eaker. Bridges answered that he knew them through work. During the meeting Bridges was asked if he was involved in the conspiracy to get Johnson fired. Bridges answered along the lines of "I do not recollect." Bridges was not given or shown any documents during this meeting.

At the conclusion of the meeting, Bridges' employment was terminated. Though not immediately given an articulated reason for his termination, Bridges was instructed that a letter would be sent setting forth the reasons for his termination. A few days later, Bridges received from his union representative a copy of the disciplinary notice reflecting reasons for his termination. A week later, SVC mailed Bridges a different disciplinary notice with different grounds for Bridges' termination. On April 21, 2008, SVC sent a letter to Bridges explaining that SVC had inadvertently mailed an incorrect notice and enclosed a copy of the same disciplinary notice Bridges had received from his union representative, which accurately reflected the meeting and discussion held on March 10, 2008.

### III.　　DISCUSSION

When bringing a discrimination lawsuit, a plaintiff may present the court with either direct or indirect evidence of actions based on the prohibited *animus*. Bridges acknowledges the lack of direct evidence of discrimination, and moves forward under the indirect method of proof. SVC argues that not only does Bridges lack direct evidence of actions based on the prohibited *animus*, but he also is unable to establish a *prima facie* case under the ADA.

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of intentional discrimination. *Nawrot v. CPC Intern*. 277 F.3d 896, 905 (7th Cir. 2002). The establishment of a *prima facie* ADA discrimination claim requires the following inquiries: (1) is plaintiff a qualified individual with a disability or perceived as one;

7

(2) was plaintiff performing his job satisfactorily; (3) was an adverse employment action suffered; and (4) were similarly-situated employees outside of the protected class treated more favorably. *Amadio v. Ford Motor Co.,* 238 F.3d 919, 925 (7th Cir. 2001). Once the plaintiff establishes a *prima facie* case, a legal, rebuttable presumption of discrimination arises, and a burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. *Id.* If the employer satisfies that burden, the presumption of discrimination extinguishes, and the burden shifts back to the plaintiff to persuade the trier of fact either directly that a discriminatory reason more likely motivated the action, or indirectly that the employer's articulated reason for the employment action is unworthy of credence, and a mere pretext for intentional discrimination. *Id.*; s*ee, e.g.*, *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253-56 (1981).

SVC does not dispute the fact that Bridges' termination constitutes an adverse employment action; therefore, the Court will address only the remaining three elements of Bridges' *prima facie* case, each in turn.

### A. Disability

In order to bring suit under Title 42 U.S.C. § 12102, the plaintiff must either establish that he was disabled, or that he was perceived as being disabled. To establish a *prima facie* case of disablement, a plaintiff may demonstrate that <u>either</u>: (1) he has a physical or mental impairment that *substantially limits* him in one or more *major* life activity; (2) he has a record of such impairment; <u>or</u> (3) that the employer regarded him as having such impairment. *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005); 42 U.S.C. § 12102(1) (emphasis added). If the plaintiff's condition does not meet one of these categories, even if terminated because of some medical condition, they are not disabled within the meaning of the ADA. *Id.*

Here, Bridges alleges that his physical impediment substantially limits his ability to care for himself or in the alternative, that SVC regarded him as disabled.

Equal Employment Opportunity Commission regulations interpreting the ADA define "major life activities" as including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship,* 209 F.3d 678, 683-84 (7th Cir. 2000). The Supreme Court has found that it is "insufficient ... to merely submit evidence of a medical diagnosis of an impairment," and that the ADA requires claimants "to prove a disability by offering evidence that the extent of the limitation caused by their impairment *in terms of their own experience* is substantial." *E.E.O.C. v. AutoZone, Inc*., 630 F.3d 635, 643-44 (7th Cir. 2010) (emphasis added) (quoting *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567 (1999)). Further, the relevant time for assessing a claim of disability is the time the adverse employment is suffered.

During the relevant period, Bridges suffered from various back conditions which caused periods of incapacitation which he alleges constituted a physical impairment. These back conditions include degenerative disc disease, herniated lumbar discs, and pain such as chronic back pain and sciatica. Bridges further alleges that these conditions substantially limited his ability to care for himself. SVC contends that any periods of incapacitation Bridges suffered were too infrequent to constitute a substantial limitation on any life activity. Bridges testified that during his periods of incapacitation, he is unable to care for himself and must have others assist him in many daily activities such as getting out of bed or off the couch, bathing, dressing himself, driving, or using the restroom without assistance. Bridges' back conditions are chronic, incurable, and demonstrably severe. Although afflicted with incapacitation only a few days per

month on average, he may also be incapacitated for longer periods of time. *Dillbeck v. Whirlpool Corp.,* 2008 WL 3819824, at *16 (S.D. Ind. July 24, 2008) (the court found that plaintiff raised genuine issue of material fact on whether her IBS substantially limited her ability to care for herself when plaintiff suffered from an IBS episode between two to five times a month and when a severe episode occurred she was she unable to lift things, walk around, or bathe herself). These periods of incapacitation are unpredictable and will afflict Bridges for the remainder of his life. When compared to the average person in the general population, the Court cannot say that Bridges' limitations are solely "moderate" ones. The Court finds that from the foregoing evidence a reasonable trier of fact could find that Bridges is substantially limited in the life activity of caring for himself.

### B. Similarly Situated Persons

Because the Court finds the similarly situated prong of the *prima facie* analysis to be dispositive, the Court will assume *arguendo* that Bridges was meeting SVC's legitimate expectations, and turn to the discussion of similarly situated employees. Bridges asserts that both Eaker and Cooper may be designated as similarly situated employees. SVC contends that Bridges has not provided the Court with sufficient evidence demonstrating that a similarly situated employee received more favorable treatment. The Court agrees.

While a similarly situated employee "need not be identical," such an employee must be comparable in all material respects. *Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003); *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002). "This typically means that the alleged comparator held the same type of job, reported to the same supervisor, was subject to the same standards and rules, had comparable experience and qualifications, and engaged in the same conduct without being subject to the same level of discipline." *Young v. Digger Specialties, Inc*., 2010 WL 3940455, at *5 (N.D. Ind. October 5, 2010); *Brummett v.*

*Sinclair Broad Group, Inc*., 414 F.3d 686, 692-93 (7th Cir. 2005). Additionally, when a plaintiff claims to have been disciplined more harshly than other employees, the court must consider whether the proffered 'similarly situated' employees had any differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Everroad v. Scott Truck Systems, Inc*., 604 F.3d 471, 479 (7th Cir. 2010); *Antonetti v. Abbott Labs.,* 563 F.3d 587, 592 (7th Cir. 2009).

Bridges points to the treatment of Cooper and Eaker as comparators, alleging that both were treated more favorably as evidenced by the allegedly unfair investigation process he was subjected to and his resulting termination. Bridges argues that both Cooper and Eaker gave false statements and yet were given more favorable treatment and a greater opportunity to respond to the charges. However, Bridges' prior conduct distinguishes him from both Eaker and Cooper. Due to his infraction and conduct record, Bridges had received a final written warning by SVC, while Eaker and Cooper had not. According to the Policy, any additional infractions could result in the employee's termination.

Again, when a plaintiff claims to have been disciplined more harshly than other employees, as Bridges claims here, the Court must consider whether the proffered 'similarly situated' employees had any other differentiating or mitigating circumstances which would *distinguish their conduct or the employer's treatment of them.* Eaker had not been subject to the progressive disciplinary action Bridges had been subjected to, and Cooper had been forthcoming regarding his role in the alleged conspiracy. This is sufficient to distinguish any favorable treatment allegedly given during the investigation and termination process. Therefore, the Court finds that Bridges has not provided sufficient evidence of an employee who was alleged to have participated in a conspiracy to terminate another employee's employment, who received more

favorable treatment by SVC than Bridges. In turn, Bridges' *prima facie* case of disability discrimination cannot stand. Further, the Court would be remiss if it did not again recognize that Bridges' alleged co-conspirator and closest comparator suffered the exact fate as Bridges – termination.

    **C.**    **Pretext**

Additionally, even if the Court accepted Bridges' assertion he is able to establish a *prima facie* showing of discrimination, Bridges has not proffered sufficient evidence to demonstrate that SVC's reason for termination was pretextual. Pretext may be shown by presenting evidence "tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Nawrot v. CPC Intern.*, 277 F.3d 896, 906 (7th Cir. 2002) (quoting *Testerman v. EDS Technical Prods. Corp.,* 98 F.3d 297, 303 (7th Cir.1996)). Pretext requires more than a showing that the decision was "mistaken, <u>ill considered</u> or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been shown." *Id*. (emphasis added) (quoting *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000)).

Here, SVC claims that Bridges was terminated because he and co-worker Eaker coerced and manipulated another co-worker, Cooper, into making false accusations against yet another co-worker, Johnson. SVC conducted its own investigation and as a result of this investigation, made the decision to terminate Bridges' and Eaker's employment. Bridges disputes the factual bases for his termination; however, did not present sufficient evidence that would lead a reasonable jury to conclude that SVC did not *honestly* believe that Bridges' conduct warranted termination.[3]

---

[3] Along similar lines, no evidence supports the view that SVC actually believed Bridges' explanations or denials, yet terminated him anyway.

Bridges' arguments amount to no more than a denial that the incidents underlying the termination occurred and challenging the sufficiency of his opportunity to be heard on the matter. The Seventh Circuit Court of Appeals has stated that "the real reasons behind an employer's action may be shameful or foolish, but unrelated to ... discrimination, in which event there is no liability." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767 (7th Cir. 2006). Though SVC's decision may be characterized by some as ill-considered, Bridges cannot prove that SVC's reason for his termination was factually baseless or related to discrimination. The Court finds Bridges unable to rebut SVC's proffered legitimate, nondiscriminatory reasons for the discharge as a pretext for discrimination. Further, considering Bridges was questioned about the alleged conspiracy during the March 10, 2008 meeting and was not questioned about anything related to insubordination or the like, the Court is not persuaded that the contradictory termination letters constitute evidence of pretext.

## IV. CONCLUSION

For the reasons noted herein, Defendant's Motion for Summary Judgment (Dkt. 30) is **GRANTED** and a separate judgment shall enter in favor of Defendant.

SO ORDERED.

DATE: 08/03/2011

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

13

DISTRIBUTION:

Ryan C. Fox
JOHN H. HASKIN & ASSOCIATES
rfox@hlllaw.com

John H. Haskin
JOHN H. HASKIN & ASSOCIATES
jhaskin@hlllaw.com

Amy Suzanne Wilson
FROST BROWN TODD LLC
awilson@fbtlaw.com

Heather L. Wilson
FROST BROWN TODD LLC
hwilson@fbtlaw.com